# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3779

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Michael Oliver, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: May 15, 2006
Filed: August 4, 2006

_____

Before LOKEN, Chief Judge, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Michael Oliver of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Oliver was sentenced to 40 months' imprisonment and three years' supervised release. Oliver appeals his conviction based on a ruling of the district court[*] that permitted the government to elicit testimony concerning prior distribution of cocaine by Oliver. We affirm.

---

[*]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

At approximately 10:00 p.m. on July 25, 2004, in Cape Girardeau, a patrolman stopped a vehicle driven by Oliver because the vehicle's rear license plate lamp was not operating. Vincent McNeil was a passenger in the vehicle. Oliver provided the patrolman with his license and proof of insurance, and the officer returned to his patrol car to determine whether Oliver was wanted on any outstanding warrants.

Upon receiving confirmation that Oliver had outstanding warrants for traffic violations, the patrolman arrested Oliver and placed him in the back of the patrol car. Around this time, two additional officers arrived at the scene and frisked McNeil. The officers discovered a sock, filled with cocaine and marijuana, stuffed down McNeil's pant leg. At the police station the next morning, Oliver confessed that he had given the cocaine to McNeil after the patrolman initiated the traffic stop, and stated that McNeil had no prior knowledge of the cocaine.

McNeil testified as a witness for the prosecution at Oliver's trial. He explained that he had seen Oliver put only marijuana into the sock, but he could tell there was something else in the sock, because the sock was "a little heavy." McNeil testified that he did not know specifically what else was in the sock, but when an officer said the sock felt "kind of hard" and asked what was inside, McNeil told him "it was probably cocaine." (T. Tr. at 102). The government, anticipating that Oliver would argue in defense that the cocaine belonged to McNeil, asked McNeil why he thought it was probably cocaine. McNeil responded that Oliver is "known for drugs, selling drugs." (*Id*. at 112). Oliver objected, and the court instructed the jury to disregard the answer.

The parties then conferred with the court, and the government argued that McNeil's testimony should be admitted for the purpose of explaining why McNeil came to the conclusion that the sock probably contained cocaine. Over Oliver's objection, the court allowed McNeil to testify about why he believed the harder object was cocaine. McNeil responded that "months before . . . this happened, we was

-2-

sitting about talking about what he do in Cairo[, Illinois], and how he said, he will say something like, 'I'm down there rocking this P, trying to get rid of this P, man.'" McNeil explained that "rocking this P" was slang for selling powder cocaine. (T. Tr. at 126-27). The court later gave a limiting instruction "to make it clear that [the disputed] testimony was offered and admitted for the sole purpose of explaining why Mr. McNeil may have believed the contents of that sock was probably cocaine and for no other purpose." (*Id*. at 154).

Oliver argues that the district court abused its discretion by permitting the government to elicit this testimony from McNeil. According to Oliver, the testimony concerned prior bad acts by Oliver and was introduced to prove action in conformity therewith, in violation of Federal Rule of Evidence 404(b). We need not decide whether the district court abused its discretion, because we conclude that any error in allowing this evidence was harmless. Fed. R. Crim. P. 52(a); *see Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946).

The evidence at trial showed that the morning after the traffic stop, Oliver completed, initialed, and signed an Advice of Rights form, waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). A police officer assisted Oliver in completing the advice-of-rights form and in preparing a written confession. Oliver signed the confession, and the officer read it to the jury at trial. According to Oliver's statement:

> I went to East St. Louis on 7/25/04, Sunday, to get a load of cocaine. I picked up eight ounces of cocaine in East St. Louis. . . . I had picked up Vincent McNeil in East St. Louis after I had picked up the drugs. McNeil did not know I had any cocaine. . . . [After arriving in Cape Girardeau], a police unit pulled us over. The officer came and got my driver's license and walked back to the patrol car. I had a suspicion that I had some warrants for my arrest, so I pulled the cocaine from underneath the driver's side front seat and gave it to McNeil. He did not

know anything about it until then. I did not think that they would check McNeil because he wasn't driving. I told McNeil to hide it down his pants. The cocaine was going to be delivered to Cairo.

(T. Tr. at 163-64).

Even assuming the district court should not have received McNeil's testimony that Oliver admitted "rocking this P" and "trying to get rid of this P" in Cairo several months before the traffic stop, we are confident that the alleged error was harmless. The jury heard McNeil's testimony that Oliver handed him the sock filled with cocaine and marijuana after the vehicle was stopped by police. There was testimony that Oliver was wearing only one sock when he was arrested, and that the sock containing the cocaine matched the garment on Oliver's covered foot. The jury was then presented with Oliver's confession that, indeed, he possessed the cocaine with the intent to deliver it to Cairo, and that he handed the cocaine to McNeil during the traffic stop. Oliver points to no countervailing evidence that might have led a jury to believe it reasonable that McNeil gave false testimony that Oliver was the source of the cocaine, and that Oliver gave a false confession admitting that he possessed the cocaine with the intent to distribute it. Under these circumstances, we conclude that whatever the propriety of admitting McNeil's disputed answer, the testimony did not substantially influence the outcome of the trial. *See Kotteakos*, 328 U.S. at 765. Any error was therefore harmless.

The judgment of the district court is affirmed.

_____